UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

| | | |
|---|---|---|
| UNITED STATES | \| | CASE NUMBERS: |
| V | \| | 3:08cr22/LAC/EMT |
| JAMES FREEMAN | \| | 3:13cv304/LAC/EMT |

DEFENDANT'S OBJECTIONS TO THE MAGISTRATE'S

REPORT AND RECOMMENDATION

Defendant James Freeman received the Magistrate's
Report and Recommendation in the above-styled 28 USC §2255
proceeding; dated August 29, 2016, on September 2, 2016. The
Magistrate denied the request for an evidentiary hearing,
recommends denial of the motion, and denial a certificate of
appealability. Freeman objects to the Report and
Recommendation (hereafter referred to as the R&R) in its
entirety and objects to the denial of an evidentiary hearing
and certificate of appealability. Freeman's more specific and
detailed objections, as required by Eleventh Circuit Rule 3-1,
follow.

## OBJECTIONS TO THE BACKGROUND STATEMENT

In a footnote at page 3 of the R&R, the Magistrate references Freeman's denial in his Memorandum that he actually confessed, in an effort to bolster an argument that the evidence against Freeman was "overwhelming". This assertion is factually incorrect, as there is no confession in the record. As Freeman showed in his filings, the record is clear (through the transcribed testimony of Agent LeBlanc) that he did NOT confess to the specific advertisement, transportation or reception that the Grand Jury indicted him for. Nor did he ever confess to being engaged in a child exploitation enterprise or conspiracy. And, as shown in detail in Freeman's §2255 motion, memorandum and reply, the "overwhelming evidence"claims are without merit.

The Magistrate's claim at page 5 that Freeman and 5 other defendants confessed to each other that they were members of a "child pornography ring" is patently false and factually unsupported. The record contains no evidence or testimony that any such conversation took place. Only the 6 individuals that entered guilty pleas actually admitted to being serious child pornography traders, and none of them ever claimed or testified to having provided Freeman with a single piece of child pornography. Nor did they claim to have received any from him.

## OBJECTIONS TO THE SPECIFIC FINDINGS

1) The Magistrate's findings as to Grounds 1, 2, 10 and 55 are factually and legally incorrect. Freeman clearly met the standards of Brady v. Maryland, in that: (1) the government clearly possessed the evidence, as shown by its own admission that Constable Power downloaded all of the material and none of it was destroyed; (2) Freeman did not possess the withheld evidence and could not obtain it through due diligence; (3) the government clearly "suppressed" the evidence by withholding it; and (4) where the jury was being led down a path towards a finding that the defendants were members of a child pornography ring, the presence of hundreds of thousands of legal images is definitely "material" to disproving the government's claim. The fact that the jury was made aware of the existence of legal images is not sufficient to justify preventing defense counsel from showing them. The government's claim that it did actually provide the images is not supported by the record, and should have been more fully developed in an evidentiary hearing.

The record is also clear that not only did trial counsel fail to view the legal images, he never viewed the images and videos the government intended to present at trial. Freeman fully developed this in his §2255 motion, and the government did not dispute it. The Magistrate's footnote alluding that Freeman could only view the evidence if his counsel sought a subpoena shows more ineffectiveness, not less.

The Magistrate's finding as to Ground 9 is factually incorrect. The subpoena Freeman submitted as well as its contents are what they are purported to be, absent proof to the contrary. The record clearly shows that Freeman's trial counsel filed a motion specifically naming the missing subpoenas, the government vehemently objected in writing to the motion, and the district court denied the motion. Thus the missing subpoenas must have existed, and were not provided. As Freeman clearly articulated in his Petition, Memorandum and Reply (hereafter referred to as the "filings"), the subpoenas directly contradict the government's theory of guilt as to transportation of child pornography. The Magistrate even describes the theory at page 4 of the R&R, that "members uploaded ... binary files in one newsgroup, and would place a message in another newsgroup ... with instructions".

The Magistrate's finding as to Ground 5 is legally incorrect. Freeman makes no claim that he was beaten or otherwise physically harmed or injured. He claims that any actions or statements by him were a result of coercion, as defined by Arizona v Fulminante, 499 US 279 (1991). Coercion clearly existed since: (a) the party was a federal law enforcement agent, and (b) there was a credible threat to force Freeman's family (including very young children) to remain outside; in plastic restraints, pajamas and bare feet, on a stone driveway, in full view of the public and in 40-degree weather in February, unless Freeman waived his rights and agreed to cooperate with agents. Additional facts support the totality of the circumstances in that Freeman was known to be a loving and caring father and grandfather dedicated to his

family, and that the federal agent was backed up by a dozen
heavily-armed SWAT team members in riot gear to enforce the
threat. Pursuant to Jackson v Denno, 378 US 368 (1964), the
voluntariness of Freeman's statements can only be decided  in
a pre-trial setting by the district court. Given the reliance
on Freeman's alleged statements at trial, it is more likely
than not that the outcome would have been different if the
statements had been suppressed based on coercion. This matter
clearly required an evidentiary hearing in order to take
testimony regarding the circumstances of the arrest and trial
counsel's failure to file a motion to suppress the
statements.

The Magistrate's finding as to Ground 7 is legally
incorrect. Freeman's "nonsensical" claim is actually grounded
in the binding precedent of the 11th Circuit, as he clearly
articulated in the filings. In United States v Mitchell, 565
F.3d 1347 (11th Cir 2009), law enforcement agents seized,
without a warrant, a laptop computer with consent and a hard
drive over Mitchell's objections. The seizure was based on
Mitchell's statement that they probably had child pornography
on them. The agents waited three weeks to obtain a warrant to
search the seized items. The 11th Circuit ordered the evidence
suppressed based on the unreasonable delay in obtaining the
warrant. Thus, under Mitchell, it matters not if Freeman did
or did not voluntarily consent to the initial seizure of the
items. The seizure was rendered unlawful by the failure to
obtain a timely warrant (indeed, as Freeman points out, no
warrant was ever obtained), and the evidence derived from the
items should have been suppressed.

The Magistrate's finding as to Ground 8 is both legally and factually incorrect. The Magistrate ignores the clear finding of the 11th Circuit in United States v McGarity, 669 F.3d 1218 (2012), the direct appeal in this case. The 11th Circuit found it improper to charge obstruction of an "unknown official proceeding at some time in some place by some action", and that such an error was "no minor deficiency". McGarity @ 1240. This finding of the 11th Circuit regarding the parroting of a statute, without further information in the indictment outlining the specific acts involved, constitutes "law of the case" in this instance. See United States v Bobo, 419 F.3d 1264, 1267 (11th Cir 2006). Regarding the Magistrate's relitigation claim, she merely echoes the government's factually incorrect claim. Because Freeman's ineffective appellate counsel did not raise any challenge to the language used to charge Counts 6, 18 and 29 in his brief, the issue has never been before the 11th Circuit. The fact that Freeman's trial counsel sought and was denied a bill of particulars does not save the indictment or cure the error. Indeed, "a bill of particulars may not save an invalid indictment". United States v Kelly, 2014 US Dist LEXIS 38522 (N.D.Ga); citing United States v Carrier, 672 F.2d 300 (2nd Cir 1982).

The Magistrate's findings as to Grounds 4, 14 and 54 are both legally and factually incorrect. When a defendant is charged in more than one count, venue must be proper with respect to each count. United States v Davis, 666 F.2d 195, 198 (5th Cir Unit B 1982). Establishing proper venue for the conspiracy count does not automatically grant venue to the

substantive counts. Pursuant to United States v Rodriguez-Moreno, 526 US 275 (1998), a two-step analysis is required to establish venue. First, the conduct constituting the offense must be identified. Second, the location of the commission of the criminal acts must be discerned. As the Supreme Court had earlier found, "The locus delicti must be determined from the nature of the crime alleged and the location of the acts constituting it". United States v Cabrales, 524 US 1 (1998). Without going into great detail on the essential elements of advertising, transporting and receiving child pornography, we can agree that each requires some action directly occurring in the Northern District of Florida. The record contains no evidence of these actions at all. It was never shown that any substantive advertisement for which a codefendant was charged arrived at Freeman's computer and was read. It was never shown that the items codefendants were charged with transporting were received by Freeman. And it was never shown that Freeman provided any of the items the codefendants were charged with receiving. The Magistrate's belated reliance on a Pinkerton vicarious liability theory is likewise legally and factually incorrect. Pursuant to United States v Mothersill, 87 F.3d 1214, 1217 (11th Cir 1996), "application of the Pinkerton doctrine to the facts of a case lies within the jury's domain". Pinkerton liability requires a specific jury instruction (which the government did not request and was not given) and a subsequent finding by the jury that Pinkerton liability did exist regarding the specific substantive count or counts in question. The government presented highly inflammatory and prejudicial evidence in support of these

substantive counts, which clearly prejudiced Freeman.
Severance of the counts was required because "inculpatory
evidence [was] admitted against one defendant that [was] not
admissible against [Freeman]. United States v Chavez, 584 F.3d
1354, 1360 (11th Cir 2009); citing United States v Lane, 584
F.2d 60 (5th Cir 1978). In closing, Freeman does not argue
that venue was improper for his own counts. Only that the
improper venue of the codefendants' substantive counts
resulted in the introduction of highly inflammatory and
prejudicial evidence that prevented Freeman from receiving a
fair trial. This prejudice is discussed in further detail
below.

        The Magistrate's findings as to Grounds 23, 24, 25 and
27 are factually and legally incorrect. The child pornography
CD discussed could not have been admitted into evidence if
Freeman had been tried alone, as the government never
established a connection between Freeman and the CD. See
United States v Blankenship, 382 F.3d 1110 (11th Cir 2004);
citing United States v Baker, 98 F.3d 330 (8th Cir 1996). As
to McGarity's confession, there is a two-fold analysis. First,
the confession of a non-testifying codefendant (like McGarity)
is inadmissible if it inculpates the defendant (Freeman).
United States v Arias, 984 F.2d 1139, 1142 (11th Cir 1993).
See also McIntyre v Williams, 216 F.3d 1254, 1259 (11th Cir
2000); "admission of the out-of court statement of a
nontestifying codefendant [violates] the Confrontation
Clause". Second, if the statement does not inculpate Freeman
or mention him at all, it lacks any relevance and, like the
Castleman CD, would have been inadmissible if Freeman had been

tried alone. As previously shown in the discussion on venue, the Magistrate's co-conspirator arguments are unfounded, since the prejudicial evidence has nothing to do with a conspiracy. The fact that the 11th Circuit ruled the CD admissible as to Castleman himself and the confession admissible as to McGarity himself, following argument by their respective appellate counsel, is irrelevant to the argument here. The 11th Circuit was not asked to rule on the possible prejudice or inadmissibility as to Freeman alone, and the Magistrate cites no finding by the 11th Circuit to show otherwise. The prejudice claimed in Ground 24 also falls under Blankenship and the previous venue argument. Not one of the substantive counts of codefendants are linked to Freeman. Thus none of the highly inflammatory and prejudicial images and/or videos presented to the jury would have been admissible had Freeman been tried alone. The record does not support the Magistrate's finding as to Ground 25. The government claimed it had to show the images and/or videos because defendants refused to admit to their pornographic nature or that they contained real children. But at least 2 of the defendants had given the government the stipulation it desired, in exchange for a promise that the content would not be shown. And then the government showed the content anyway. As it happens, the content attributed to the 2 defendants granting the stipulation was the worst, most heinous content to be shown. While it is legally correct that a stipulation can't prevent the showing of images and videos to the jury, one would think a promise by the government would be trustworthy. Apparently not in the Northern District of Florida. It should be noted

that Freeman is NOT one of the defendants who gave the pre-trial stipulation requested.

The Magistrate claims as to Ground 27 that the government needed to provide evidence of "real" children by soliciting testimony describing interactions with "known victims". This concept is without legal basis due to the facts in this case. There is nothing in the record to show that any defendant was claiming the images and/or videos they were charged with advertising, transporting or receiving did not contain "real" children. By statute, such a claim had to be made in writing well before trial commenced. More importantly, not ONE of the "known victims" presented to the jury actually appears in ANY image or video for which one of the defendants was charged. The fact that these "known victims" were in fact "real children" did nothing to prove that the images and/or videos that were the basis of any charge likewise contained "real" children. The evidence had no probative value at all, thus was entirely prejudicial.

The Magistrate's finding as to Ground 26 is legally incorrect. The 11th Circuit did find error regarding the improperly solicited testimony, but deemed it harmless based on a belief that the evidence was otherwise overwhelming. As Freeman has shown clearly throughout his filings, that belief was legally $\overset{\text{AND}}{\Downarrow}$factually in error.

The Magistrate's finding as to Ground 56 is legally incorrect. Rules 403 and 404 of the Federal Rules of Evidence both require a "weighing" of the possible prejudicial and probative values of potentially inflammatory evidence before allowing it to be admitted.

The Magistrate's finding as to Ground 17 is factually and legally incorrect. Freeman provided ample legal authority in support of the contention that the Confrontation Clause required that he be able to cross-examine the person downloading and decrypting the messages and binary materials as to their methods, procedures and eventual results. Agent Wilder testified to the authenticity of the messages and content as they were being admitted, and also testified that he was NOT the person who had downloaded and decrypted them. This constitutes impermissible hearsay, and the Magistrate provides no legal authority to the contrary. The concept that defense counsel must wait until the government rests its case, recall the government's witnesses, and have them authenticate already-admitted evidence to overcome hearsay has absolutely no basis in law or jurisprudence. The question of authenticity goes to the admissibility of the evidence. Since Freeman could not cross-examine Power, the evidence (the postings, images and/or videos) were all inadmissible, and neither the government nor the Magistrate cites any law to the contrary. It should be noted that while the Magistrate calls attention to Freeman's argument that the government was required to provide the original encrypted messages and did not do so, she provides no finding or legal argument on the matter. Thus the Magistrate has conceded Freeman's claim that Federal Rule of Evidence 1002 (the "best evidence rule") was violated. Freeman's inability to prove a negative regarding outcome does not mean the Rule was not violated, and this is precisely the sort of question that required an evidentiary hearing and discovery.

The Magistrate's findings as to Grounds 19, 20, 21 and 22 are legally incorrect, ignoring a vast wealth of precedential caselaw. The testimony of the government's witnesses can be one of two things. Statement of an opinion, or statement of a fact. Regarding the former, "A government witness may not offer an opinion as to whether the defendant committed the offense with which he is charged." United States v Gonzalez, 414 F.Appx 189, 200 (11th Cir 2011); United States v Blackburn, 398 F.Appx 453, 466 (11th Cir 2010)(characterizing such testimony as "improper"). Regarding the latter, a witness cannot testify to a fact or facts that he could not possibility know to be true (regardless of what he might "believe"). Such testimony is considered to be "incredible as a matter of law". That is, the witness can't provide "testimony as to facts that [he] physically could not have possibility observed". United States v Rivera, 775 F.2d 1559, 1561 (11th Cir 1985); United States v Isaacson, 752 F.3d 1291, 1304 (11th Cir 2014); United States v Lopez, 562 F.Appx 891, 897 (11th Cir 2014); United States v Feliciano, 747 F.3d 1287, 1288 (11th Cir 2014). The phrase "as a matter of law" leaves no room for interpretation or discretion. The testimony is simply not allowed. Period.

In light of this legal backdrop, the prosecution's charts, particularly those claiming that Freeman was in fact the person using certain nicknames to post certain messages, and testified to as being true by the government's witness, constituted either an improper opinion, improper legal conclusion, or incredible testimony. The agent did not physically observe Freeman using ANY of the nicknames on the

chart, and it was the province of the jury to decide if Freeman was the person using the nicknames. Agent Wilder's improper legal conclusion, that Freeman's images and/or videos constituted child pornography, certainly invaded the province of the jury and was clearly improper either as an opinion or a fact. The Magistrate provided no legal authority for the novel concept that instructing the jury on the essential elements of an offense (which occurs in all trials) somehow overcomes all testimonial errors. As for Agent Wilder's irrelevant testimony regarding Sergio Marzola, it should be noted that Freeman did not and never has spoken to him. The record is clear that Freeman only made statements to Agent Cochran and Constable Power. Agent LeBlanc, who testified at trial, never mentions in her filed report that Agent Wilder was present and participated in Freeman's interview. That report contains the reference to Sergio Marzola and Freeman's belief that his arrest may be related to Marzola's, which is where Agent Wilder got the information. The record also shows (and the Magistrate recognizes) that Sergio Marzola provided both child pornography and legal child modeling images. Because Agent Wilder could not possible have observed Freeman's transaction with Marzola, he could not testify as to what content it involved. It should also be noted that none of the images and/or videos that were the basis of any charge were purported to have come from Marzola or were associated with him in any way. Thus the testimony had no probative value.

The findings as to Grounds 28, 29 and 33 are legally incorrect. The Magistrate claims that Freeman's material variance claim is "not well-founded", but this is because she

mis-characterizes it as a claim that the government used evidence at trial different than what it used at the Grand Jury proceeding to prove the SAME offense conduct. As Freeman clearly articulated in his filings, the Grand Jury was provided a specific posting, which the government claimed was a "notice" pursuant to 18 USC §2251(d)(1)(a), and the content associated with the posting. Based on this information, the Grand Jury found probable cause that Freeman had posted the notice and indicted him on the single count of advertisement. Any other "notice", posted on a different day and addressing different content, would be a different specific offense requiring a different count in the indictment (to avoid charging more than one offense under a single count, as Freeman thoroughly argued in his filings). Since the government presented NO evidence (as opposed to "different evidence") in support of the notice and content the Grand Jury based its indictment on, we are faced with two possibilities. One, the jury convicted Freeman on the basis of a different posting altogether or two, the conviction is based on prejudice rather than facts. The former is not permitted, as the government cannot shift its theory of guilt from one criminal offense for which the Grand Jury issued an indictment, to another, for which the Grand Jury failed to indict. See generally United States v Nunez, 180 F.3d 227 (5th Cir 1999). When "the facts presented at trial to support [the charge] differed from the specific facts charged ... insufficient evidence supported [the] conviction." United States v Gilbert, 47 F.3d 1116, 1118 (11th Cir 1995). In the abundance of caution and thoroughness, Freeman also postulated

that IF it was permissible for the jury to base its Count 6 conviction on one of the other postings it was shown, addressing two Russian videos, there was still insufficient evidence to support the conviction (as well as the conviction for Count 18). As Freeman thoroughly discussed in his filings, the videos in question do not constitute child pornography. Neither the government nor the Magistrate has provided any facts or arguments to the contrary. The Magistrate does rightly state that child pornography is not protected speech. But all speech is protected until proven otherwise. Freeman has shown the videos are not child pornography, thus they are in fact protected speech. The fact that some people may find them distasteful or even erotic, as clearly discussed in previous filings, does not make them pornographic.

As to whether or not Count 6 is a continuing offense, it is true that an offense that operates over a period of time, such as a conspiracy, is a continuing offense. But this status is triggered by statutory language, not infirm language in an indictment. Would the Magistrate automatically define bank robbery as a "continuing offense" simply because an indictment claimed it occurred over a two-year period? Regardless, the issue is of little relevance here. The statute clearly requires a specific notice addressing specific content, not an ongoing course of conduct that operates with nonintermittent force.

The Magistrate's findings regarding Grounds 30, 31 and 32 are legally and factually incorrect. The 11th Circuit was never asked to pass judgement on the sufficiency of the evidence regarding Counts 6, 18 and 29, so it isn't possible

for the evidence to have been sufficient and free of error.
The government also made the same claim, also without being
able to provide a direct citation to where in the McGarity
decision this finding occurred. Thus, the arguments Freeman
made are in fact cognizable, and relief is warranted on basis
of ineffective assistance of trial and appellate counsel, if
no other. It is true that the 11th Circuit found the evidence
sufficient to support Count 1, after engaging in some creative
legal posturing more thoroughly described in Freeman's initial
filings. But, as shown in those filings and here, if the
convictions for Counts 2, 6 and 18 are faulty, Count 1 cannot
stand. The three counts constitute the 'legs' that are the
predicate acts required.

       The findings of Grounds 34, 35, 36, 37 and 52 as they
apply to the Count 2 conspiracy are legally and factually
incorrect, not to mention contradictory. Freeman provided
ample evidence to prove there was no conspiracy. Both the
government and the Magistrate, rather than dispute or counter
the claim, simply pointed out that the 11th Circuit had
vacated the Count and thus the argument was moot. And yet,
both rely on the conspiracy conviction that has been vacated
as 'proof' to support not only the Count 1 conviction, but
many other arguments (venue, for example). If the conviction
remains in effect for such purposes, it should be ripe for
challenge. In which case the government, as Freeman pointed
out in his reply, has conceded there was no conspiracy by
refusing to dispute the claim. It should also be noted here,
for thought, that under prevailing caselaw in continuing
criminal enterprise cases, the conspiracy used to prove the

"in concert" element cannot be used also as an underlying predicate offense.

The Magistrate's findings as to Grounds 41, 42, 43 and 44 are factually and legally incorrect. She claims that Freeman is not entitled to relief on Ground 41 because his suggestion is "purely speculative". To the extent that ANY claim is 'speculation', (after all, nothing is 100% certain, as the district court pointed out in its "Good Book" reference) this is true. But that is not the standard Freeman is required to meet. Freeman need only show that it is more likely than not that the outcome would have been different, not that there is an absolute certainty that it would have been different. Given the myriad issues previously discussed here and in the filings regarding the material variance, a vague indictment, videos that were not child pornography and couldn't be viewed, etc, it would seem to be true that a requirement that the jury unanimously agree on what specific conduct and content met the essential elements of each offense would have resulted in a not-guilty verdict. Such an instruction would have most definitely forced the jury to concentrate on the evidence specific to Freeman rather than the highly prejudicial evidence presented against his codefendants. What also should be noted here is that, unlike her comment regarding Ground 44, the Magistrate makes no mention of the fact that this issue was fully developed and could have been raised on direct appeal. Regarding Ground 42, Freeman has already shown previously that venue was improper as to the other 6 defendants regarding their substantive

counts. The Magistrate cites no rule or law prohibiting
Freeman's trial counsel from requesting the instruction in, if
no other reason than to establish a record of prejudice for
appeal purposes. The Magistrate's finding as to Ground 43
contains its own contradictions, based mainly on her mistaken
belief as to the proof required. As the record shows, the
government presented a pair of videos in support of
advertisement, transportation or both. It is unclear which.
Both videos, as the Magistrate appears to concede here, were
not pornographic. Given that the jury was only shown these two
videos and Freeman made no admission on the record as to any
others, there can be no "abundant evidence" that Freeman
transported other child pornography. The Magistrate continues
to ignore the requirement that an offense meet essential
elements beyond a reasonable doubt. "A defendant is entitled
to have the court instruct the jury on his theory of the case,
as long as it has some basis in the evidence and has legal
support." United States v Presley, 487 F.3d 1346, 1350 (11th
Cir 2007) (internal citations omitted). As described above and
throughout the filings, both of these requirements are met. As
discussed previously, there was absolutely no evidence
introduced at trial to prove aiding and abetting. Thus any
instruction was improper, prejudicial and served only to
confuse the jury. The question that should have been
addressed, given the Magistrate's concession that the matter
was fully preserved for appeal, is whether or not the 11th
Circuit would have agreed that the instruction was improper if
appellate counsel had presented the issue. Based on the
arguments Freeman already provided in his filings, that answer

would have to be 'yes'.

The Magistrate's findings as to Grounds 66, 67, 68, 69, 70 and 71 are legally incorrect. The claims are cognizable in this proceeding because Freeman has claimed ineffective assistance of counsel for failing to raise the indiscretions. The Magistrate actually concedes this point in stating that the petition for writ of certiorari is the proper vehicle for addressing them. The fact that the petition was filed is irrelevant since, as Freeman claimed, it addressed the wrong errors.

The Magistrate's findings as to Grounds 59, 60, 61 and 64 are likewise legally incorrect, for the same reason. They are the subject of substantive claims of ineffective assistance of both trial and appellate counsel. Given the scope of Freeman's prior discussions here and in the original filings on the underlying events, he need not revisit them here. The claims required actual discussion, not a procedural dismissal.

The Magistrate's findings as to Grounds 72, 73, 74 and 75 are legally and factually incorrect. They are also based on assumption made without benefit of testimony or affidavit from the trial attorney. The Magistrate provides no reasoning, factual or legal, as to why counsel was not constitutionally ineffective during the pretrial stage, other than perhaps the idea that he is a nice guy. Freeman presented ample facts and legal precedent to establish clear deficiencies and prejudice due to counsel's failure to file a motion to suppress and failure to adequately investigate and prepare in the pretrial phase. The claim that trial counsel "defended his client aptly

despite the strength of the government's case" is laughable.
Freeman had already shown, and has reiterated here, that the
government's case against him was nearly non-existent as to at
least half of the counts. The Magistrate's determination that
trial counsel made a strategic decision not to present a
defense, absent testimony from the attorney himself to that
effect, is impermissible. The Magistrate also uses trial
counsel's closing argument to bolster a claim of
effectiveness. But she forgets that Freeman was never charged
with possession of child pornography. Counsel can't be
considered effective for arguing his client was guilty of an
offense he wasn't charged with. Perhaps if counsel had
accompanied this argument with a request for a jury
instruction permitting a finding of possession as a lesser-
included offense the jury could convict on instead of
advertisement, transportation and reception, the Magistrate's
reasoning would be sound. Instead, it simply reinforces the
idea that trial counsel had no idea what his client was
charged with and wasn't prepared to defend him. The
Magistrate's claim regarding plea negotiation is legally
incorrect as well. Pursuant to Missouri v Frye, 132 S.Ct. 1399
(2012) and Lafler v Cooper, 132 S.Ct. 1376 (2012) (both cited
by the Magistrate), the defendant's ultimate guilt doesn't
"inoculate [counsel's] errors in the pretrial process." from
collateral attack under Strickland. Frye, 132 S.Ct. @ 1407.
The Court also determined that "the fact that respondent is
guilty does not mean he was not entitled by the Sixth
amendment to effective assistance of counsel ... during plea
bargaining." Lafler, 132 S.Ct. @ 1388. The Magistrate's

discussion of Freeman's claims of innocence are baseless.
Every criminal claims innocence, even as their counsel seeks a
plea agreement. Many, as the Magistrate is no doubt aware,
even claim innocence AFTER entering a guilty plea. The
Magistrate also ignores the passage of time, in which a
defendant (like Freeman) may entertain pleading guilty early
on in the face of what appears to be solid evidence, only to
learn later in the process (as occurred here) that the
government actually had no case. Granted, Freeman may have
regretted an early plea deal on learning there was no
evidence, but such are the risks of guilty pleas in today's
criminal justice system. But none of these factors excuse
trial counsel's unwillingness to enter into plea negotiations.
Again, absent testimony from trial counsel, the Magistrate
cannot tell us why he did not do so. In closing, the
Magistrate seems to justify trial counsel's effectiveness on
the basis of what little he did do, rather than the many
things he did not do and should have based on prevailing
professional norms. She likewise makes no mention of Freeman's
claim that counsel violated Cronic by not presenting a defense
and not subjecting the government's case to 'meaningful'
adversarial testing. Freeman fully argued and supplemented
this claim. The other issue ignored is that pursuant to 11th
Circuit precedent, trial counsel can be ineffective if his
actions (or inactions) affected the outcome of the direct
appeal. Freeman also fully developed this argument in his
filings, but notes briefly here that it is much easier for the
government to claim "overwhelming evidence" if the other tray
on the scales is completely empty!

The Magistrate's finding as to Grounds 76, 77 and 78 are legally and factually incorrect. Freeman fully discussed appellate counsel's deficiencies in his filings, which the Magistrate chose to ignore. Freeman has already shown the error in the Magistrate's finding that there were no "sure winners", by showing that the; indictment was indeed infirm, Count 6 was indeed a material variance, the videos were not pornographic and could be the only possible basis for the transportation conviction, evidence was withheld, evidence should have been suppressed, etc. Every one of these issues has factual and legal merit, notwithstanding the Magistrate's finding to the contrary. The effectiveness of appellate counsel in this setting is best summed up by the 11th Circuit's holding and dicta in Overstreet v Warden, 811 F.3d 1283 (11th Cir 2016), which Freeman filed as a supplemental authority in this case. As Freeman pointed out in that supplement, the presumption of effectiveness is overcome if stronger issues are overlooked or ignored, failing to recognize or ignoring said stronger arguments is "patently deficient", the fundamental purpose of appellate counsel is to argue bases for reversal of convictions ,and that counsel is automatically ineffective if he failed to raise a claim so obvious that any competent lawyer would raise it. Overstreet @ 1287-88. Every one of these situations apply here. Ultimately, Freeman showed in his filings that "counsel's performance ... fell below and objective standard of reasonableness as well as [demonstrated] that but for the deficient performance, the outcome would have been different." Black v United States, 373 F.3d 1140, 1142 (11th Cir 2004). As the court stated in Clark

v Crosby, 335 F.3d 1303, 1312 n.9 (11th Cir 2003), "The only question under the prejudice prong of the Strickland test is whether there was a REASONABLE (my emphasis) probability that the appellate court, [had appellate counsel not been deficient] ... would have granted [the petitioner] a new trial." See also Ferrell v Hall, 640 F.3d 1199, 1236 (11th Cir 2011). The question of appellate ineffectiveness also could have benefited from an evidentiary hearing, but was not required. Appellate ineffectiveness, since appeals are based on the existing record, can often be decided on that same record. As Freeman has clearly shown, the record strongly supports his claims of appellate ineffectiveness. Freeman need only show the 11th Circuit; absent abandoning existing precedent, would have ruled differently had the stronger issues been raised.

Freeman's final objection applies to Ground 49, addressing the use of Freeman's prior conviction to enhance his sentence. While it is true the 11th Circuit ruled the enhancement to be proper, albeit after appellate counsel made the wrong argument, Freeman requested supplemental grounds following the Supreme Court's decision in Johnson regarding the vagueness of the residual clause of the Armed Career Criminal Act. It subsequently made Johnson retroactive, and now has another case on the docket to determine if the rationale applies to the Sentencing Guidelines as well. Other circuits have expanded the doctrine to other residual clauses found in other statutes, and Freeman maintains the same rationale applies to the residual clause used to include his prior offense. Freeman objects to the decision of the Magistrate,

that the clause in question for some reason was NOT a residual clause, and objects to the exclusion of any discussion on the requested grounds here.


OBJECTION TO THE DENIAL OF AN EVIDENTIARY HEARING

The Magistrate's decision to not hold an evidentiary hearing is legally incorrect. The court must hold an evidentiary hearing if Freeman presents facts that, if true, would require relief. Aron v United States, 291 F.3d 708, 714-15 (11th Cir 2002). Freeman has done so, outlining countless facts that warrant relief. Stated another way, the evidentiary hearing must be held "unless the motions, files and record CONCLUSIVELY (my emphasis) show the [petitioner] is entitled to no relief." Anderson v United States, 948 F.2d 704, 706 (11th Cir 1991). The opposite is true. The record conclusively supports Freeman's claims, and the government has not provided any citations to the record to the contrary, other than the already-discredited "overwhelming evidence" claim that itself is not supported by the record. And as already pointed out, the Magistrate made several assumptions on the reasoning of the trial attorney rather that take testimony from him, a clear violation. The Magistrate clearly erred in not holding an evidentiary hearing, and was prevented from making a true and correct recommendation because of it.

## CONCLUSION

Based on the objections as well as the original §2255 motion, memorandum and reply Freeman is clearly entitled to relief, notwithstanding the Magistrate's finding to the contrary. It should be noted again that the Magistrate failed to address many of Freeman's factual and legal claims, even though she mentioned each Ground by number. The court should address those omitted claims, decline to accept the R&R, and grant the relief requested. The court should also consider relief based on cumulative error doctrine, should it be necessary.

Should the court decline to grant relief, Freeman believes a Certificate of Appealability is appropriate on the following issues, grouped by subject:

Grounds 1, 2, 9 and 10; Grounds 17, 20 and 21; Grounds 28 thru 32 inclusive; Ground 7; Ground 8; and Grounds 72 thru 78 inclusive to the extent they apply to the previous Grounds cited.

Respectfully submitted this 12th day of September, 2016.

*[signature]*

⇨06947-017⇦
James Freeman
06947-017
United States Penitentary
PO Box 24550
Tucson, AZ 85734

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served, via U.S. Mail, on Pamela Marsh, United States Attorney, 21 East Garden Street Suite 400, Pensacola, Florida 32502 this 12th day of September, 2016.

CERTIFICATE OF MAILING

Pursuant to Fed. R. App. P. 4(c)(1), the "prison mailbox rule", copies of the foregoing were filed by presenting them to the mail room at Tucson United States Penitentiary in full compliance with institution policy regarding legal mail, on September 12th, 2016.

JAMES PAGSONAN 06947-017
UNITED STATES PENITENTIARY
POST OFFICE BOX 24550
TUCSON, ARIZONA 85734

LEGAL MAIL

<>06947-017<>
Clerk of the Court
1 N Palafox ST
Pensacola, FL 32502
United States

SEP
13
2PM

American Toleware